UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

GEARY SIMON,

    *Defendant*.

No. 24-cr-284 (DLF)

## MEMORANDUM OPINION AND ORDER

Before the Court is the defendant's last-minute Emergency Motion to Reconsider Motion to Delay Self-Surrender, Def.'s Mot., Dkt. 43, which the government opposes, Gov't Resp., Dkt. 44. On July 10, 2025, the Court sentenced Geary Simon to 15 months imprisonment for wire fraud, in violation of 18 U.S.C. § 1343, and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Judgment 1–3, Dkt. 31. Simon now seeks to delay his surrender date for a second time. *See* Def.'s Status Report 1–2, Dkt. 38. He offers two grounds in support of his renewed motion: his recent redesignation to FCI Cumberland and a clarifying letter from his doctor.[1] Def's Mot. 3–4, Dkt. 43. Neither persuades the Court to reconsider its previous order requiring the defendant report to the Bureau of Prisons (BOP) on October 27, 2025, to begin serving his 15-month sentence.

Given the defendant's fast approaching surrender date and the need to decide this motion expeditiously, the Court will not recount the full history of this case. Instead, the Court will principally focus on the events that have occurred since Simon's sentencing on July 10, 2025. But

---

[1] Although BOP informed the defendant through Probation on October 19, 2025, that he would be designated to FCI Cumberland instead of FCI Lewisburg, *see* Dkt. 43-3, the defendant chose to wait four days to file his motion. He did so after work hours on October 23, 2025. Even so, the Court ordered an immediate response from the government, which the government filed the next day. *See* Dkt. 44.

as the Court explained when giving the reasons for its sentence, *see* Rough Tr. of July 10, 2025, Sentencing Hearing 103–06, the record as a whole firmly establishes that Simon has engaged in a long history of fraud and deceit.

This case represents the *third* occasion on which Simon has been convicted of serious federal fraud offenses.  *See* Presentence Report (PSR) ¶¶ 1, 4, 69, 70, Dkt. 20.  In 1985, he was convicted in the Eastern District of Virginia of 18 counts of mail fraud, interstate transportation of stolen property, and tax fraud, resulting in an aggregate sentence of 10 years imprisonment.  *Id.* ¶ 69.  Two years later, in the Middle District of Pennsylvania, Simon was convicted of mail and wire fraud and sentenced to 18 months imprisonment for conduct that occurred while he was incarcerated.  *See id.* ¶¶ 69–70.  Not only has he been referred to as a "pathological liar" by a treating psychologist, *see* Rough Tr. 101–02; PSR ¶ 106, but two separate Superior Court Judges, as well as this Court, have found Simon's inconsistent representations regarding Robert Sutton, his so-called business partner, not credible, *see* Rough Tr. 95–97, 102.  Simon's consistent pattern of deceit, coupled with his repeated delays in this case,[2] lead the Court to question both the timing and veracity of his current motion.

After sentencing Simon to 15 months in prison for wire fraud and unlawful possession of a firearm by a convicted felon, the Court ordered him to self-surrender to BOP on September 8,

---

[2] The defendant has a history of filing last-minute requests to delay proceedings in this case, including, for example, (1) a motion to delay the April 2025 sentencing hearing after failing to timely complete the required presentence interview with the Probation Officer, *compare* Def.'s Mot. 1, Dkt. 13, *with* Gov't Resp. 1, Dkt. 14, and (2) a last-minute motion seeking a continuance of the May 2025 sentencing hearing to obtain two expert declarations, *see* Def.'s Mot. 1–2, Dkt. 25.  Moreover, as the Court noted at the July 2025 sentencing, the defendant failed to provide the Court with either expert declaration until the night before the sentencing hearing, *see* Rough Tr. 3–4, even though the defendant's sentencing materials were originally due in March 2025.  The defendant also failed to provide the government with his physician's declaration until the night before the sentencing hearing.  *Id.* at 4.

2025. *See* Judgment 1–3, Dkt. 31. On July 29, 2025, Simon received his designation of FCI Lewisburg. Dkt. 33-1. On August 15, 2025, he filed a motion to delay his surrender date by 90 days, citing a need for spinal surgery. Def.'s Mot. 1, Dkt. 33. The Court initially denied his motion, observing that the defendant had "offered no evidence—other than his own representations that the Court will not credit—that his circumstances have significantly changed since the time of his sentencing such that the Court should further delay his self-surrender date." August 20, 2025 Min. Order. On August 25, 2025, Simon filed a motion for reconsideration, this time attaching a letter from his doctor that confirmed an immediate need for surgery and requesting a delay of only 52 days, until October 27, 2025. Def.'s Mot. 5–6, Dkt. 35. The Court granted the motion and ordered the defendant to report to BOP on October 27, 2025, after his surgery and his doctor's projected 45-day recovery period. *See* Order 1, Dkt. 36.

Anticipating the potential for further defense requests for delay, the Court ordered the defendant to file, no more than four days after surgery, a status report indicating when he would be able to report to prison. *Id.* at 2. On September 15, 2025, defense counsel filed a status report stating that the defendant's surgery had proceeded "as scheduled" and "was successful." Def.'s Status Report 1, Dkt. 37. The defendant did not seek any additional delay in his October 27 surrender date. *Id.*

Still anticipating further defense requests for delay, the following day the Court ordered the defendant to file another status report on or before October 8, 2025, updating the Court on the defendant's post-surgery recovery. September 16, 2025 Min. Order. The Court also ordered the parties to schedule a hearing the week of October 13, 2025, at which the Court would expect to hear from both the Bureau of Prisons and the defendant's doctor, if there were a request to further delay the defendant's October 27 surrender date. *Id.* Instead of scheduling a hearing, on October

3

8, 2025, the defendant moved to delay his surrender date yet again—this time by an additional 75 days, until January 10, 2026. Def.'s Status Report 2, Dkt. 38. Defense counsel reported that the defendant was experiencing "continued and significant pain," which "prompt[ed] Dr. Patel to order an MRI" of the defendant's spine and "one to two sessions of physical therapy per week over the next four to six weeks." *Id.* at 1–2.

Consistent with its order of September 16, 2025 (and *not* because defense counsel requested a hearing, *but see* Def's Mot. 1, Dkt. 43), the Court scheduled a hearing for October 16, 2025, to address the defendant's motion to delay his surrender date a second time. The Court also directed the defendant to share the results of his MRI. *See* October 15, 2025 Min. Order. In his October 15, 2025, status report, the defendant amended his requested delay from January 10, 2026, to December 1, 2025, given "his treating surgeon's recommendation." Def.'s Status Report 2, Dkt. 40. In a letter accompanying the status report, Dr. Patel, the defendant's surgeon, again confirmed that the defendant's "surgery was successful" and stated that he "is recovering, albeit more slowly than anticipated." Def.'s Status Report, Ex. A, Dkt. 40-1. Dr. Patel noted that the defendant "has been referred to physical therapy to assist with his recovery and to move him away from dependence on a walker for assistance." *Id.* But he expected the defendant to be "fully cleared to report to prison on December 1st." *Id.*

At the October 16 hearing, which took place during the government shutdown, the Court considered a declaration filed by the Clinical Director at FCI Lewisburg, *see* Dr. Edinger Decl., Dkt. 39, and heard the testimony of Dr. Patel. Dr. Patel confirmed that "there were no significant problems identified with the MRI." Tr. of October 16, 2025, Status Conference 2, Dkt. 42. He agreed that it would be "ideal" to have the defendant report on December 1 so that "he could get some more physical therapy." *Id.* at 2–3. He explained that it would be "beneficial" for the

4

defendant to get "specialized" physical therapy, rather than see a "generic" physical therapist. *Id.* at 3. He also testified that the defendant had been delayed in starting physical therapy due to difficulty finding a physical therapist who would accept Medicare. *Id.* at 4.

Dr. Patel was explicit with the Court about what he had said to Simon and his counsel. He testified that he said to Simon, "enough of this crap," and "arranged for him to see someone that he is going to pay for," someone "he will be paying out of network" for. *Id.* He further testified that he told Simon, "Let's get *your* ass in gear. You go to therapy. You get to go see this person." *Id.* (emphasis added). He also said, "We are not screwing around with Medicare, enough of this, let's get *your* ass in gear." *Id.* (emphasis added). As Dr. Patel explained, "That was the exact language Mr. Simon heard from me. And his attorney heard from me." *Id.* at 4–5; *but see* Def.'s Mot 2, Dkt. 43 (asserting that Dr. Patel told the defendant that an unspecified "*they* would get [his] ass in gear"). Dr. Patel has since written a letter to "clarify" that Simon "has exercised good faith and due diligence in getting his own ass in gear" and that he has seen no signs of "malingering" from him. Def.'s Mot, Ex. B, Dkt. 43-2.

Even if the Court were to conclude that Dr. Patel has sufficient firsthand knowledge to credit his perspective that Simon has acted in "good faith" and has not been "malingering," the fact remains that his surgery, though serious, was "successful," Dkt. 40-1. Dr. Patel's view was made clear in the September 15 status report, Dkt. 37, Dr. Patel's letter to the Court, Dkt. 40-1, and his testimony during the October 16 hearing, Tr. 2–3, Dkt. 42. There is nothing in his most recent letter, Dkt. 43-2, that calls into question Dr. Patel's consistently held view that Simon's surgery was a success.

Accordingly, the sole issue before the Court is whether BOP, and FCI Cumberland in particular, can provide Simon with access to adequate physical therapy services. Quite clearly,

5

BOP can. BOP has told this Court not once, but twice, that Care Level 2 facilities like FCI Cumberland and FCI Lewisburg are able to manage the medical needs of individuals who are recovering from surgery for spinal stenosis. *See generally* Declaration of Justin Sines (Cumberland Decl.), Dkt. 44-1; Declaration of Dr. Andrew Edinger (Lewisburg Decl.), Dkt. 39. Indeed, both facilities have successfully cared for inmates who have had spinal stenosis surgery while in custody. Cumberland Decl. ¶ 10; Lewisburg Decl. ¶ 7. And both facilities offer physical therapy for such patients at offsite facilities or at local hospitals. Cumberland Decl. ¶ 7; Lewisburg Decl. ¶ 3. Both facilities also facilitate medical transfers to BOP's medical facilities when needed. Cumberland Decl. ¶ 10; Lewisburg Decl. ¶ 8.

This record makes Simon's representations as to *why* he has failed to engage in a *single* physical therapy session in the six weeks since his surgery wholly irrelevant. But even if the Court were to consider these explanations, Simon's history of deception—as well as his ability to access "world-class" medical care, Tr. 11, Dkt. 42, and other services and resources, *see generally* PSR[3]—lead the Court to view his claims of "problems with . . . Medicare" and scheduling issues with providers with great skepticism, Def.'s Mot. 2–3, Dkt. 43.

---

[3] As Simon admitted to the Probation Officer, and confirmed at sentencing, he "owned and operated" his own real estate development company for "over 42 years," which had up to 40 employees. PSR ¶ 123; *see* Rough Tr. 35, 84, 87. Over many years, he personally earned more than $300,000 in annual income as the founder and operator of the firm. *See* PSR ¶ 123 (defendant stating that he earned an "annual profit" of $500,000 and paid himself $25,000 in "monthly salary" between the 1990s and 2016); Rough Tr. 35–36, 84. To the extent that the Court's understanding of Simon's current financial circumstances is incomplete, that is entirely due to the defense's failure to comply with the Probation Officer's repeated requests to provide her with the financial disclosure releases necessary for her to gain access to the defendant's financial records. *See* PSR ¶ 126; Rough Tr. 34–35. Simon represented to the Probation Officer that he had approximately $23,000 in assets, including a car and $3,500 in cash, PSR ¶¶ 125–26, but—despite the Probation Officer's repeated requests—he never provided "any supporting documentation of his assets, liabilities, income, or monthly expenses," *id.* ¶ 126. And even though Simon failed to report any ownership interest in his residence, the Probation Officer was able to discover that his residence

By all accounts, Simon's September 11 surgery was a success. On October 16, he appeared in Court with the assistance of a walker. To date, more than six weeks after surgery, he has been unable to secure the physical therapy services his physician ordered 17 days ago, Dkt. 38-1. The Bureau of Prisons stands ready to provide the defendant with physical therapy through outside professionals, as it has done for other BOP inmates who have had spinal stenosis surgery. Cumberland Decl. ¶¶ 7, 10; Lewisburg Decl. ¶¶ 3, 7.

The Court will not further delay Simon's surrender date so that he can receive a "specialized" physical therapy of his choice. "At the end of the day, the guiding principle must be that Mr. [Simon] is entitled to no more and no less consideration than any other similarly situated convicted felon." *United States v. Stone*, 471 F. Supp. 3d 67, 69 (D.D.C. 2020). The time has come for this defendant to report to the Bureau of Prisons, as previously ordered.

---

has a market value of $415,880 and is owned by "The Geary Stephen Simon 2016 Trust Agreement." *Id.* ¶ 127.

Accordingly, it is

**ORDERED** that the defendant's Emergency Motion to Reconsider Motion to Delay Self-Surrender, Dkt. 43, is **DENIED**. It is further

**ORDERED** that barring a stay from the U.S. Court of Appeals for the District of Columbia Circuit,[4] the defendant shall report to FCI Cumberland on Monday, October 27, 2025, no later than 2:00 p.m., as previously ordered.

**SO ORDERED.**

```
                                        DABNEY L. FRIEDRICH
                                        United States District Judge
```

October 25, 2025

---

[4] To the extent the defendant decides to pursue appellate review of this Order and seeks a stay of his surrender date pending appeal, the Court will not stay its Order on this record. Accordingly, the defendant shall promptly file any emergency motion for a stay pending appeal in the U.S. Court of Appeals for the D.C. Circuit to ensure that the appellate court can address his motion before his October 27 reporting deadline.